UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER DMYTRIW, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

COMENITY BANK,

    Defendant.
_____/

CASE NO.:

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, CHRISTOPHER DMYTRIW, individually and on behalf of all others similarly situated, alleges COMENITY BANK ("Comenity") robo-called him numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

### INTRODUCTION

2. Comenity remains one of, if not the most abusive, robodialer in the country.

3. If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015).

4. "Robocalls" are the #1 consumer complaint in America today and the Defendant's conduct in this case is a good reason why.

5. The TCPA was enacted to prevent companies like Comenity from invading American citizens' privacy and prevent illegal robocalls.

6. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of

protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

7. "Senator Hollings, the TCPA's sponsor, described these calls as '**the scourge of modern civilization**, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014). As will be illustrated in this case, despite being told to stop calling, these defendants refused to do so.

8. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These type of damages are the same shared by the Plaintiff and the class members.

9. Today, this scourge has become even worse than anyone ever imagined in 1991.

10. In May of 2019, Americans were bombarded with a shocking 5.2 *billion* robocalls —an increase by an incredible 370% just since December 2015.[1]

---

[1] YouMail Robocall Index, available at http://RobocallIndex.com/

11.     The 4th Circuit in *Krakauer v. Dish L.L.C.,* No. 18-1518, 2019 WL 2292196 (4th Cir. May 30, 2019) rendered a compelling and thoughtful opinion which illustrates in no uncertain terms why these TCPA case can and should be handled on a class wide basis, holding:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications. (p. 18)
>
> The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls. S. Rep. No. 102-178, at 1-2 (1991). Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages. The features of the private right of action in § 227(c)(5), whether statutory damages or strict liability, evince an intent by Congress to allow consumers to bring their claims at modest personal expense. These same features also make TCPA claims amenable to class action resolution. Dish's arguments, if accepted, would contort a simple and administrable statute into one that is both burdensome and toothless. It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb. (p. 33)
>
> This will not happen. Class adjudication is complicated, and getting it right requires a careful parsing of the claims and the evidence from the start. It also requires striking a balance between efficient administration and fairness to all those affected, whether they be the class members, the defendants, or absent parties who are nonetheless bound by the judgment. The proceedings below reflected just the measured and thorough approach that we might hope for in such demanding situations. (*Id.*)

12. "[T]he legislative intent behind the TCPA supports the view that class action is the superior method of litigation. '[I]f the goal is to **remove the scourge**' from our society, it is unlikely that individual suits would deter large entities as effectively as aggregated class actions and that individuals would be motivated … to sue in the absence of the class action vehicle." [emphasis added] *Krakauer v. Dish Network L.L.C.,* 311 F.D.R. 384, 400 (M.D.N.C. May 22, 2017).

13. Comenity is not the only one of these "large entities" that clearly needs to be stopped, but also bears the dubious distinction of perhaps being the most abusive robocalling debt collector in the country.

14. Comenity recently settled the TCPA class action, Carrie Couser v. Comenity Bank, et al, 3:12-cv-02484-MMA-BGS, for $8,475,000 settlement, and in doing so, specifically carved out what it referred to as "wrong numbers". These "wrong numbers" are at issue on this case. However, these are not really "wrong" numbers, they are in fact the exact right number Comenity intended to call. They would be more accurately labeled "illegal numbers" robocalled without express consent.

15. The *Couser* class action has not stopped Comenity from breaking the law; indeed, it appears to have emboldened it into assuming it can continue to break the law and get away with it.

16. As suggested in the *Krakauer* case, individual suits have provided no deterrence whatsoever against serial TCPA violators like Comenity, as evidenced by the over 100 individual lawsuits against Comenity in the last few years. Attached hereto is Exhibit A which lists each case individually filed against Comenity relating to the alleged issues in this Complaint.

17. Comenity, as a serial violator of the TCPA, and has settled hundreds of TCPA lawsuits, including those in arbitration and handled pre-suit. Comenity pays "hush-money" to their individual victims of robo-harassment that are aware enough of their rights to sue it, and then forces these persons to sign confidentiality agreements. Comenity in essence uses this as a way to continue to break the law and get away with it.[2]

18. Comenity's business model in making these types of calls puts profits over people. This form of abuse is so lucrative that individual settlements can be made without making a significant dent in the profits inherent to the abuse.

19. Comenity Bank is one of the top five companies with the most debt collection complaints in 2017 according to an analysis completed by the National Consumer Law Center ("NCLC") using data from the Federal Trade Commission ("FTC"). Please see Exhibit B attached hereto this Complaint.

20. Comenity has been ordered to turn over the prior complaints made by their own customers as discovery in another lawsuit. See *Ehrlich v. Comenity Capital Bank, a subsidiary of Comenity LLC*, (S.D. Fla. August 07, 2017) Attached as Exhibit C.

## JURISDICTION AND VENUE

21. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

22. The alleged violations described in this complaint took place in Springhill, Florida, which is within the territorial jurisdiction of the Middle District of Florida.

---

[2] This information will be obtained through discovery and will assist this Court in determining the willful and knowing violation of the TCPA.

## FACTUAL ALLEGATIONS

23. Plaintiff is a natural person, and citizen of the State of Florida, residing in Springhill, Florida.

24. Plaintiff is the "called party." See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

25. Comenity is a corporation with its principal place of business in Columbus, Ohio, and conducts business in the State of Florida and across the United States.

26. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (352) 263-7987.

27. Plaintiff was the "called party" during each phone call subject to this lawsuit.

28. On or about August 12, 2018, Plaintiff began receiving a campaign of telephone calls to his aforementioned cellular telephone number from Defendant. Plaintiff had fallen a month behind on his payments. The Defendant blasted Plaintiff's cellular telephone with over 379 calls by the use of an ATDS or a pre-recorded or artificial voice in the span of two months.

29. On October 3, 2018, Plaintiff answered a call from Defendant and demanded that Defendant stop calling his aforementioned cellular telephone number.

30. On the very same day, Plaintiff answered two more calls from Defendant and demanded that Defendant stop calling his aforementioned cellular telephone number.

31. Defendant called Plaintiff fifteen times total on October 3, 2018.

32. During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any consent Defendant may have mistakenly

believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

33. Defendant roboblasted calls to Plaintiff's cellular telephone over 379 times by the use of an ATDS or a pre-recorded or artificial voice in the span of two months, from August of 2018 to October 03, 2018.

34. Defendant continued their egregious campaign of robocalls to Plaintiff's home phone number (352) 293-4725 a total of 768 times during the same time period.

35. After Plaintiff revoked all consent to be called to his cellular phone number, Comenity called his home phone more than 30 times a day, on back to back days.

36. Defendant called Plaintiff's home telephone number, (352) 293-4725, 690 times from October 4, 2018 to October 30, 2018.

37. Each call Defendants made to the Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

38. Defendants have recorded at least one conversation with the Plaintiff.

39. Despite actual knowledge of their wrongdoing, and knowing they did not have Plaintiff's consent, the Defendants continued its barrage of phone calls to Plaintiff's aforementioned cellular telephone number.

40. Comenity has a corporate policy of repeatedly contacting debtors in order to receive payments. Although deceptive, Comenity has a corporate policy of using blanket phrases in their account notes in order to continue calling alleged debtors.

41. Comenity will mark down phrases such as "wrong number", "third party no message left", "Online refusal" or even "online promise" when the corresponding recording will have instructions to "stop" calling, known as revocation.

Case 8:19-cv-01790-WFJ-SPF   Document 1   Filed 07/23/19   Page 8 of 16 PageID 8

42. Plaintiff asked Comenity to stop calling on three different occasions yet none of the revocations appeared in Defendant's notes. Defendant uses these account notes to service Plaintiff's account yet makes no reference that Plaintiff revokes consent to be called.

43. Defendant has a habit of producing account notes with zero indication of revocation when alleged debtors revoke consent to be called, claim to be harassed, or even threaten legal action.

44. On October 3rd, 2018, Plaintiff was called a total of 15 times to his cellular phone. Plaintiff asked three separate people to "stop calling" his number. Each entry made during this day states "Wrong number", "ONLINE wrong number", and "wrong number" when Plaintiff actually respectively stated "Please stop contacting this number", "I've asked you to stop contacting this number" and "I've asked you to stop calling this number. Thank you".

45. Defendant made at least one call to (352) 263-7987 using an "automatic telephone dialing system" (ATDS).

46. Defendant made hundreds of calls to (352) 263-7987 using an ATDS.

47. Each call the Defendant made to (352) 263-7987 in the last four years was made using an ATDS.

48. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

49. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

50. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

51. Defendants' aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

52. Defendants' phone calls harmed Plaintiff by wasting his time, trespassed on his phone, invaded his privacy as well as caused aggravation and inconvenience.

53. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendants' phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

54. Defendant has made approximately three hundred and seventy-nine (379) calls to Plaintiff's aforementioned cellular telephone number from in or about August 2018 through at least October 2018.

55. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

56. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

57. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

58. Defendant's phone calls harmed Plaintiff by wasting his time.

59. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

60. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

61. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

62. Defendant made calls to Plaintiff often times more than 10 times a day, sometimes exactly thirty minutes apart which supports use of a specific calling campaign by an automatic telephone dialing system.

63. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

64. Defendant violated the TCPA with respect to the Plaintiff and members of the class.

65. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and the members of the class.

### COUNT I
**(Violation of the TCPA)**

66. Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

67. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff without having express consent to place such calls using an ATDS or pre-recorded voice.

68. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked any

consent the Defendant mistakenly believed it had to being called by them using an ATDS or pre-recorded voice.

69. Defendant repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

70. As a result of Defendant's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

71. Plaintiff and class members are also entitled to, and does, seek injunctive relief prohibiting Defendant from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## CLASS ALLEGATIONS

72. Plaintiff restates each of the allegations in all other paragraphs as if fully stated herein. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

73. In this case, Plaintiff seeks to certify the class, subject to amendment, as follows:

Comenity Bank TCPA Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number

(3) Defendant placed a non-emergency telephone call (4) using

>substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Comenity Bank did not have express consent to call said cellular telephone number.

And the following sub-class:

>All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) after that person told Defendant or its agent to stop calling.

74. Defendant has caused the Class actual harm, not only because the Class was subjected to the aggravation that necessarily accompanies these calls, but also because said members frequently have to pay their cell phone service providers for the receipt of such calls.

75. These calls are also an intrusion upon seclusion, trespassed on their telephones, diminish cellular battery life, and waste of Plaintiff's and the class member's time.

76. Plaintiff represents and is a member of the Class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

77. Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and scope of Defendants' business, Plaintiff reasonably believes that the class members' number at a minimum in the thousands based on the use of software to make the calls and Defendants' history of failing to comply with the TCPA.

78. Plaintiff and all members of the Class have been harmed by Defendants' actions.

79. This Class Action Complaint seeks money damages and injunctive relief.

80. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

81. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Defendants.

82. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members.

83. Those common questions of law and fact include, but are not limited to:

(1) Whether Defendants engaged in a pattern of using an ATDS to place calls to cellular telephones without the prior express consent of the called party;

(2) Whether Defendants' conduct was knowing or willful; and

(3) Whether Defendants' actions violated the TCPA.

84. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class.

85. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

86. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

87. A class action is the superior method for the fair and efficient adjudication of this controversy.

88. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA is small.

89. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

90. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

91. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE,** Plaintiff requests that the Court enter judgment in her favor and favor of the Class, and against Defendants for:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction requiring Defendant not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called now or when Plaintiff obtains additional telephone numbers in the future;

c. An injunction requiring Defendant to remedy their policies pertaining to account notes and recording of revocation to ensure that Plaintiff is not called in the future;

      d.      An injunction requiring Defendant to file quarterly reports of third-party audits with the Court on its system and procedures not to call any parties or numbers that revoked consent to ensure that class members are not called in the future;

      e.      An award of actual damages in an amount to be proven at trial;

      f.      An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

      g.      An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

      h.      An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

      i.      An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

      j.      Such further and other relief the Court deems reasonable and just.

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 21, 2019, a true copy of the foregoing was filed with the Clerk of the Court and served on the parties of record using the CM/ECF system.

Respectfully submitted,

*s/William "Billy" Peerce Howard, Esq.*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorneys for Plaintiff*